```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


OLEG & ANGELA SHTUTMAN,          :    Civil No. 14-792 (JEI/AMD)
                                 :
         Plaintiffs,             :
                                 :           OPINION
         v.                      :
                                 :
TD BANK, N.A., and MARISSA       :
MOSER,                           :
                                 :
         Defendants.             :
```

**APPEARANCES**:

MATTHEW S. WOLF, ESQ., LLC
By:  Matthew S. Wolf, Esq.
     Melissa A. Schroeder, Esq.
1236 Brace Road, 2nd Floor, Unit B
Cherry Hill, New Jersey 08034
          Counsel for Plaintiff

BROWN & CONNERY LLP
By:  William M. Tambussi, Esq.
     Susan M. Leming, Esq.
     Michael J. Miles, Esq.
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108

and

REED SMITH LLP
By:  Seth M. Kean, Esq.
599 Lexington Avenue
New York, New York 10022
          Counsel for Defendant TD Bank, N.A.

THOMAS J. GOSSE, ESQ.
126 White Horse Pike
Haddon Heights, New Jersey 08035
          Counsel for Defendant Moser

**IRENAS,** Senior United States District Judge:

Plaintiffs, Oleg and Angela Shtutman, husband and wife, bring this state law negligence suit against Defendants TD Bank, N.A., and its "senior manager," Marissa Moser, asserting that Defendants' negligence caused Plaintiffs to lose approximately $1.5 million in a Ponzi scheme.

Defendants timely removed the suit to this Court. Plaintiffs move to remand the case, asserting that this Court lacks subject matter jurisdiction pursuant to 28 U.S.C. § 1331.[1]  For the reasons stated herein, the Court holds that the negligence claims do not "arise under" the Constitution, laws, or treaties of the United States, as that term is used in the federal question jurisdictional statute.[2]  Accordingly, the Motion to Remand will be granted.

**I.**

In July, 2013, Everett Miller, the principal of Carr Miller Capital, LLC, pled guilty in this District to securities fraud and tax evasion. The charges allegedly arise out of a "Ponzi scheme" Miller operated through Carr Miller Capital. Prior to Miller's plea, in 2011, Carr Miller Capital was placed in receivership by the Attorney General of New Jersey.

---

[1]  The Court undisputedly lacks diversity jurisdiction pursuant to 28 U.S.C. § 1332. The parties are not diverse. Plaintiffs are citizens of New Jersey and so is Defendant Moser.

[2]  In light of the Court's jurisdictional holding, Defendants' pending Motions to Dismiss will be dismissed as moot.

Plaintiffs invested approximately $1.5 million in the Carr Miller Capital enterprise. "Investments were achieved by opening a joint account between Oleg Shtutman and Carr Miller, which TD Bank knew was completely unsound, inappropriate and criminally suspicious manner of opening an account." (Compl. ¶ 12) Miller admitted in his plea colloquy that "investors' money was commingled and pooled into one of Carr Miller's seventy-five related bank accounts," at TD Bank and that money was used for purposes other than Carr Miller ventures. (Id. ¶ 14)

The Complaint alleges that over the course of several years, TD Bank deliberately or negligently ignored suspicious transactions involving Carr Miller Capital's TD Bank accounts, and did so because its senior manager, Defendant Marissa Moser, was at one point in time Carr Miller Capital's "Comptroller/Office Manager." (Compl. ¶ 19)[3] According to the Complaint, "TD Bank had actual knowledge that client funds were being funneled through the TD Bank Carr Miller accounts but based on the special relationship that Carr Miller had with TD Bank by virtue of [Marissa Moser], TD Bank did not take actions that it should have taken." (Id. ¶ 25)

Specifically, the Complaint alleges that TD Bank should have filed with federal law enforcement and the Department of Treasury "Suspicious Activity Reports" ("SARs") as required by federal regulations 12 C.F.R. 21.11(c)(4) and 31 C.F.R. 103.18(a)(2), and the

---

[3] The allegations of the Complaint are not entirely clear as to whether Moser concurrently worked at both TD Bank and Carr Miller Capital or whether she left TD Bank to work at Carr Miller Capital.

3

Bank Secrecy Act, 31 U.S.C. §§ 5318(g) and (h)(1); and failed to properly train its employees concerning these obligations under federal law. The Complaint further states, "[a]s a direct and proximate result of TD Bank's negligence in failing to train its employees . . ., failing to issue SARs properly, failing to follow the guidance of the Bank Secrecy Act / Anti-Money Laundering Examination Manual of 2007 . . . and TD Bank's willful indifference resulting from its special treatment of Carr Miller based on Marissa Moser's employment between the two companies, Plaintiffs Oleg and Angela Shtutman suffered approximately $1.5 million in damages." (Compl. ¶ 35)

The Complaint asserts two counts: a negligence claim against TD Bank and a negligence claim against Marissa Moser.

## II.

28 U.S.C. § 1447(c) provides in relevant part, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Removing defendants bear the burden of establishing subject matter jurisdiction. *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).

Congress has conferred on district courts subject matter jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

### III.

The issue is whether a state common law negligence action which looks to federal statutory and regulatory law for the relevant standard of care arises under the laws of the United States for purposes of § 1331.

The parties agree that no federal law creates the causes of action asserted in this suit-- i.e., it is undisputed that there is no private right of action under the Bank Secrecy Act or the relevant regulations. Moreover, the removing Defendants (the proponents of federal jurisdiction) do not argue that the Bank Secrecy Act completely preempts the state law tort claims.

Thus, the Court applies the standard set forth in *Grable & Sons Metal Prods, Inc., v. Darue Engineering & Manufacturing,* 545 U.S. 308 (2005), and subsequently applied in *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006) and *Gunn v. Minton*, 133 S.Ct. 1059 (2013): "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S.Ct. at 1065; *see also, Empire HealthChoice*, 547 U.S. at 699-701; *Grable*, 545 U.S. at 314 ("the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."). The Court discusses each factor in turn.

**A.**

Plaintiffs argue that they can establish TD Bank's negligence without reference to federal law. It appears that under New Jersey law, violation of the Bank Secrecy Act's reporting requirements would not be negligence *per se*, but rather, only evidence of TD Bank's negligence. *See J.S. v. R.T.H.*, 155 N.J. 330, 349 (1998) (holding that failure to report child abuse as required by state statute was evidence of negligence and not negligence *per se*). Thus, Plaintiffs reason that the other evidence they will supply-- particularly evidence concerning Marissa Moser's relationship with both TD Bank and Carr Miller Capital-- can independently establish negligence, and therefore a federal issue is not *necessarily* raised in this case.

On the other hand, Plaintiffs specifically plead as an element of their negligence claim against TD Bank, "[t]he Bank Secrecy Act / Anti-Money Laundering Examination Manual of 2007 represents a standard of care in the banking industry which TD Bank breached," (Compl. ¶ 31), strongly suggesting that Plaintiffs' reliance upon TD Bank's asserted violations of federal law will be significant, if not central, to their case. Indeed, Appendix F of the Bank Secrecy Act / Anti-Money Laundering Examination Manual of 2007 is attached as Exhibit B to the Complaint.

In light of the Court's conclusions as to the other *Grable* factors, however, the Court need not decide whether a federal issue is "necessarily raised" in this case.

**B.**

It does not appear that any federal issue is "actually disputed" in this case. TD Bank does not argue that it is not subject to the Bank Secrecy Act and regulations upon which Plaintiffs rely. Nor does TD Bank argue in response to the Motion to Remand that, under the circumstances of this case, it was not required to file SARs. The Complaint simply alleges that federal law required TD Bank to file SARs and TD Bank did not. Contrary to TD Bank's conclusory assertions, nothing about these allegations suggests that the Court will need to construe or interpret federal law in the course of adjudicating the parties' dispute.

*Grable* itself is a contrasting example. In *Grable,* as part of the state court quiet title action, the disputed federal issue was whether service by certified mail, as opposed to personal service, was sufficient notice, under 26 U.S.C. § 6335(a), of the IRS's seizure of property. 545 U.S. at 310-11. It was clear from the outset of the case that the court would be required to "constru[e] federal tax law," because the statute itself did not state the manner of service, it only "provide[d] that written notice must be 'given by the Secretary to the owner of the property [or] left at his usual place of abode or business.'" 545 U.S. at 311 (quoting § 6335(a)). The dispute was readily apparent: Grable argued that the statute required personal service, while its adversary argued that certified mail sufficed.

*Gunn* is another example. That case involved a state law legal malpractice suit where the plaintiff-patent holder alleged that his former lawyer committed malpractice by not raising the experimental use exception to the on-sale bar in litigation over the patent's validity. 133 S.Ct. at 1062-63. The lawyer argued he could not be liable for malpractice because the experimental use exception did not apply, therefore his failure to raise the issue could not have changed the outcome of the litigation. *Id.* at 1063. In *Gunn*, like *Grable*, the dispute of federal law was clear at the outset: the patent holder asserted that the experimental use exception applied, his former lawyer argued it did not.

This case is very different from *Grable* and *Gunn*. The nature of the cause of action and the Complaint's factual allegations do not present a clear dispute of federal law. Nothing before the Court supports a conclusion that the Court will need to make a decision "respecting [the] validity, construction, or effect" of federal law, *Grable*, 545 U.S. at 315, n.3, or that this case will "turn on," a decision about federal law. *Id.* at 312. The mere presence of a "federal element" does not support jurisdiction under § 1331. *Empire HealthChoice*, 547 U.S. at 701.

### c.

With respect to the third *Grable* factor, Chief Justice Roberts, writing for a unanimous Court in *Gunn*, explained, "it is not enough that the federal issue be significant to the particular parties in

8

the immediate suit; that will always be true when the state claim 'necessarily raise[s]' a disputed federal issue, as *Grable* separately requires. The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole," 133 S.Ct. at 1066, and asks whether a decision of federal law in this case will have "broader effects" beyond the parties' own interests. *Id.* at 1068.[4]

TD Bank argues that a decision in this case could have broader effects because TD Bank apparently anticipates a conflict between its discovery obligations and 12 C.F.R. § 21.11(k)(1)(i), which generally prohibits a bank from disclosing an SAR or any information that would reveal the existence of an SAR. TD Bank seems to suggest that it might have to disclose an SAR (if, contrary to the Complaint's allegations, one does exist) and that would "create a fundamental conflict between state tort law and the [Bank Secrecy Act]." (Opposition Brief, p. 8-9)

However, the Court sees no direct conflict in this case. The regulation itself obviously contemplates a method for addressing such situations. While banks are generally prohibited from disclosing the existence of SARs, there are exceptions. The regulation itself provides that any bank that "is subpoenaed or otherwise requested to

---

[4] *Gunn* addressed the "arising under" language of 28 U.S.C. § 1338(a), which grants federal courts exclusive jurisdiction over patent cases. However, the Court stated that with regard to the "arising under" language in § 1338(a) and § 1331, "we have interpreted the phrase . . . in both sections identically, applying our § 1331 and § 1338(a) precedents interchangeably." 133 S.Ct. at 1064.

disclose a SAR or any information that would reveal the existence of an SAR" shall notify the "Director, Litigation Division, Office of the Comptroller of the Currency," and provide the Director with "the response" to the request.  12 C.F.R. § 21.11(k)(1)(i)(A).  Thus, it appears that individual banks cannot make litigation-related disclosure decisions, but the Comptroller of the Currency can.  TD Bank has not demonstrated that it, or any other bank, can *never* disclose the existence of an SAR in litigation, therefore the anticipated conflict-- particularly in this case where the related criminal investigation appears to be over (Carr Miller Capital has been placed in receivership and Everett Miller has already pleaded guilty)-- is speculative at best.[5]

The Court holds that TD Bank has not sufficiently demonstrated that a decision of federal law in this case will have consequences for the federal system extending beyond the bounds of the instant case.

**D.**

Last, but certainly not least, the Supreme Court has specifically observed that exercising federal question jurisdiction over "garden variety state tort" claims based on "federal violations" would "herald[] a potentially enormous shift of traditionally state

---

[5]  Even if a conflict were to surface, any decision regarding disclosure would necessarily be fact-specific, and therefore not broadly applicable to other lawsuits. *See Empire HealthChoice*, 547 U.S. at 700-01.

cases into federal courts." *Grable*, 545 U.S. at 319. "*Merrell Dow* thought it improbable that Congress, having made no provision for a federal cause of action, would have meant to welcome any state-law tort case implicating federal law 'solely because the violation of the federal statute is said to create a rebuttable presumption of negligence under state law.'" *Id.* at 319.

*Merrell Dow Pharmaceuticals, Inc. v. Thompson* held that a state law negligence suit which relied on an asserted violation of the federal Food, Drug, and Cosmetic Act to establish a rebuttable presumption of negligence did not arise under federal law. 478 U.S. 804 (1986). It is closely analogous to this case. Just as in *Merrell Dow*, Congress has not completely preempted state law negligence claims, nor has it created a private right of action for violations of the federal law at issue. Congress' failure to do so, the Supreme Court has explained, evidences its decision to keep such suits out of federal court. *Grable*, 545 U.S. at 318-19 (discussing the significance of *Merrell Dow*).

Exercising federal question subject matter jurisdiction over this suit, and all of the run-of-the-mill state law negligence suits like it[6], would "disrupt[] the federal-state balance approved by Congress." *Gunn*, 133 S.Ct. at 1065. Accordingly, the Court holds that it may not exercise jurisdiction over this suit pursuant to § 1331.

---

[6] *Contrast Grable,* 545 U.S. at 319 ("[I]t is the rare state quiet title action that involves contested issues of federal law.").

**IV.**

In conclusion, the Court holds that the federal issue in this case is not "actually disputed," not "substantial," and not "capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn*, 133 S.Ct. at 1065.  Therefore this Court lacks subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  Accordingly, Plaintiffs' Motion to Remand will be granted.[7] An appropriate Order accompanies this Opinion.


Date:  April 15, 2014                      s/  Joseph E. Irenas
                                        JOSEPH E. IRENAS, S.U.S.D.J.

---

[7] This result is consistent with *Bottom v. Bailey*, 2013 WL 431824 (W.D.N.C. Feb. 4, 2013); *Whittington v. Morgan Stanley Smith Barney*, 2012 U.S. Dist. LEXIS 146284 (W.D.N.C. Oct. 11, 2012); *Mirchandani v. BMO Harris Bank, NA,* 2011 U.S. Dist. LEXIS 139917 (D. Ariz. Dec. 5, 2011); and *Fornshell v. FirstMerit Bank, NA,* 2010 U.S. Dist. LEXIS 124068 (N.D. Ohio Nov. 23, 2010), all of which remanded cases after applying *Grable* to state law tort suits predicated on alleged violations of the Bank Secrecy Act.